**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MIDLAND MANAGEMENT COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 6203 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| AMERICAN ALTERNATIVE INSURANCE | ) | |
| CORPORATION, LORI LOGAN, and | ) | |
| JIM LOGAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Midland Management Company (Midland) brought this declaratory judgment action in June 2015 in the Circuit Court of Cook County, Illinois, against American Alternative Insurance Corporation (American) and Lori and Jim Logan (the Logans). R. 1, Exh. 1 at 3, Decl. J. Compl. Midland is seeking a declaration that its insurer, American, must defend and indemnify it in a lawsuit brought by the Logans against Midland that is currently pending in state court. *Id.* ¶ 1. American filed a notice of removal to federal court on July 15, 2015, alleging that this Court has diversity jurisdiction over the case under 28 U.S.C. § 1332. R. 1, Notice of Removal. Midland asks to remand the case to the Circuit Court of Cook County. R. 15, Mot. to Remand. Midland contends that this Court lacks diversity jurisdiction over this case, and that American has failed to satisfy the requirements for removal. *Id.* For the reasons discussed below, the Court denies Midland's motion for remand.

## I. Background

In January 2015, the Logans filed a lawsuit against Midland in the Circuit Court of Kendall County, Illinois, alleging that they began experiencing medical problems as early as June 2013 due to the presence of "mold, mildew, fungi and other microorganisms and/or toxic airborne pathogens" in an apartment they had rented from Midland. Decl. J. Compl. ¶ 10; R. 1, Exh. 1 at 15, Logan Compl. ¶¶ 4-7 (Count I). The Logans brought both a negligence and nuisance claim against Midland, alleging that their medical problems were the direct result of Midland's negligence in maintaining the property and that the presence of these pathogens caused them to lose the use and enjoyment of their home. *Id.* ¶ 12 (Count I), ¶ 6 (Count II). The Logans seek damages "in excess of" $50,000. *Id.* Their lawsuit remains pending in Kendall County. R. 1, Exh. 1 at 13.

After the Logans sued Midland, Midland notified American of the Logans' claims and requested that American tender a defense and indemnify Midland against any potential damages award. Decl. J. Compl. ¶ 7. At the time of the Logans' alleged injuries, Midland was covered by a liability insurance policy issued by American. *Id.* ¶ 9; R. 1, Exh. 1 at 22 (Insurance Policy). That policy was effective from March 31, 2013 through March 31, 2014, and provided liability coverage for bodily injury claims so long as the injury occurred during the policy period. Decl. J. Compl. ¶¶ 9-10. The policy also included a "Fungi or Bacteria Exclusion." *Id.* ¶ 7; R. 1, Exh. 1 at 128. Believing that this Fungi or Bacteria Exclusion precluded coverage

of the Logans' alleged losses, American denied Midland's requests for a defense and indemnity. Decl. J. Compl. ¶¶ 7-8.

Midland then filed this suit in the Circuit Court of Cook County, Illinois, seeking a declaration that American is obligated to defend and indemnify Midland in the Logans' lawsuit. *Id.* ¶ 1. In addition to naming American as a defendant, Midland also named the Logans. With regard to the Logans, Midland alleges that it is "seek[ing] no separate relief or judgment against defendant Lori Logan or against defendant Jim Logan," but that it is instead "seek[ing] only to bind those two defendants to the outcome of this coverage dispute." *Id.* ¶ 5.

American removed the case to federal court on July 15, 2015, asserting that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Notice of Removal; 28 U.S.C. § 1441(a) (allowing a defendant to remove a civil action from state court to federal court when the federal court has original jurisdiction). Midland is an Illinois corporation with its principal place of business in Illinois. Notice of Removal ¶ 4. American is a Delaware corporation with its principal place of business in New Jersey. *Id.* Based on those different states of citizenship, if this case pitted only Midland against American, then there would be diversity jurisdiction. But like Midland, the Logans are citizens of Illinois. *Id.* ¶ 5; Decl. J. Compl. ¶ 4. Thus, on the face of the complaint, complete diversity is lacking. In its notice of removal, American acknowledges this potential problem. Notice of Removal ¶¶ 3, 5. American contends, however, that the Logans were fraudulently joined and should be disregarded for jurisdictional purposes because Midland is

3

neither "asserting a cause of action against … [the Logans]," nor seeking any relief from them. *Id.* ¶¶ 3, 6. With the Logans disregarded, American argues, removal is proper and diversity jurisdiction applies, because the amount in controversy exceeds $75,000 and the proper parties to this suit—American (a Delaware corporation with its principal place of business in New Jersey) and Midland (an Illinois corporation with its principal place of business in Illinois)—are completely diverse. *Id.* In the alternative, American argues that, even if the Logans are deemed to have an interest in this declaratory judgment action, that interest is more closely aligned with Midland's interests, and therefore, the Logans should be realigned as plaintiffs, putting the Illinois citizens on one side and American on the other. *Id.* ¶ 7.

Midland now asks to remand this case to state court on three alternative grounds. Mot. to Remand. First, Midland argues that the $75,000 jurisdictional amount required by 28 U.S.C. § 1332(a) is not satisfied. R. 16, Pl.'s Br. at 1. Second, Midland argues that because the Logans are properly named defendants, the parties are not completely diverse. *Id.* Finally, Midland argues that two of the removal statute's requirements have not been satisfied: 28 U.S.C. § 1441(b)(2), requiring that no defendant be a citizen of the state in which the action is brought (a requirement that the Logans, who are Illinois citizens, cannot meet), and 28 U.S.C. § 1446(b)(2)(A), requiring that all defendants join in or consent to removal (something the Logans did not do). *Id.*

4

## II. Legal Standard

Removal is governed by 28 U.S.C. § 1441. A defendant may remove a case to federal court if there is federal subject matter jurisdiction. 28 U.S.C. § 1441(a). Removal based on diversity requires that the parties be of diverse state citizenship and that the amount in controversy exceed $75,000, exclusive of interests and costs. 28 U.S.C. § 1332; *Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1017 (7th Cir. 2014). It also requires that no defendant "properly joined and served" be "a citizen of the State in which [the] action is brought." 28 U.S.C. § 1441(b)(2) (forum defendant rule); *Hurley v. Motor Coach Industries, Inc.*, 222 F.3d 377, 378 (7th Cir. 2000).

"The party seeking removal has the burden of establishing federal jurisdiction." *Schur v. L.A. Weight Loss Ctrs.*, 577 F.3d 752, 758 (7th Cir. 2009). Failure to meet this burden results in remand of the removed case. 28 U.S.C. § 1447(c); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). When determining whether a defendant has met this burden, the Seventh Circuit has cautioned that "[c]ourts should interpret the removal statute narrowly," *id.*, and resolve any doubts regarding removal in favor the plaintiff's choice of forum in state court, *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013).

## III. Analysis

### A. Amount in Controversy

The parties dispute whether the minimum-$75,000 amount in controversy requirement has been met. Where a plaintiff seeks injunctive or declaratory relief, "the amount in controversy is measured by the value of the object of the litigation."

5

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *America's Moneyline, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004). This determination is made as of the date the suit was removed. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511-12 (7th Cir. 2006); *BEM I, LLC v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir. 2002).

As the proponent of subject matter jurisdiction, American bears the burden on this issue. *Oshana*, 472 F.3d at 511; *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997). Although "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), once that allegation is called into question, as American's has been here, the defendant must "prove [its] jurisdictional facts by a preponderance of the evidence," *see Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006); *Oshana*, 472 F.3d at 511. Once a defendant does this, "the plaintiff can defeat jurisdiction only if 'it appears to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Oshana*, 472 F.3d at 511 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)); *see also Meridian Sec. Ins. Co.*, 411 F.3d at 541.

Midland asserts that American has failed to satisfy its burden. Pl.'s Br. at 6. Midland argues that its "complaint for declaratory judgment does not request any money damages or state any dollar amount," and that the compensation sought in the underlying lawsuit "is an amount 'in excess of $50,000,'" which is "$25,000 short

6

of the $75,000 jurisdictional requirement." *Id.* at 6. Midland further argues that neither the attorney's fees from the underlying lawsuit nor from the declaratory judgment action can be considered in calculating the $75,000 because Illinois prohibits a prevailing party from recovering attorney's fees "absent an express statutory or contractual provision," which we do not have in this case. *Id.* at 6-7.

In response, American asserts that the amount at issue in this action does exceed $75,000, and includes "the sum of the value of (a) the defense plus (b) the indemnification that Midland seeks from [American]." Def.'s Resp. Br. at 12. American acknowledges that the value of the indemnification sought by Midland "is at least $50,000," but argues that the Logans "plausibly seek more than $75,000" in compensation for a variety of "medical issues," including "headaches, breathing problems, allergies, rashes and upper respiratory infections;" reimbursement for their "attempts at remediation" and for damaged personal property; and damages for the "loss of the reasonable use and enjoyment of their home." *Id.* at 12 (quoting underlying complaint; emphasis in original omitted).

American further asserts that even if the potential cost of indemnifying Midland does not exceed $75,000, the cost of indemnifying Midland *plus* the cost of providing a defense certainly does. *Id.* at 13. American contends that the defense in this case will require legal and expert fees, and that at least four experts will be needed, including two "environmental exerts to prove/refute the presence of mold in the Logan's apartment(s)" and two "medical experts to prove/refute the Logan's contention that they suffered damages, including bodily injuries, caused by mold in

7

their apartment(s)." *Id.* at 13. According to American, "there is no question that the value of the defense and the indemnification sought by Midland together plausibly exceed $75,000." *Id.*

American's argument is compelling. As a threshold matter, American is correct that both the cost of providing a defense and the potential cost of indemnifying Midland count toward the amount in controversy. This remains the case even where—as here—the underlying lawsuit remains pending. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006) (holding that potential outlay for indemnification was put in controversy as soon as insurer brought a declaratory judgment against its insured, even though a judgment in the underlying suit had not yet been rendered, because if the insurer "prevailed on defense," it would also prevail on indemnification in the same stroke).

American has also sufficiently alleged (that is, shown by a preponderance of the evidence) that the amount in controversy in this case likely exceeds $75,000. It is true that, on the face of the Logans' state-court complaint, the only explicit allegation is that they seek damages in excess of $50,000. Logan Compl. ¶ 12 (Count I). But in Illinois, like in federal court, plaintiffs are not limited to the amounts they request in their complaints. 735 ILCS 5/2-604 (2004); *Oshana*, 472 F.3d at 512. *See also* 28 U.S.C. § 1446(c)(2) (notice of removal may assert amount in controversy if the initial pleading seeks (among other things) a money judgment in which state practice permits recovery in excess of the amount demanded). And in this case, the damages sought by the Logans for their medical injuries—which they describe as

8

including "permanent personal injury," and current and future "pain and suffering" and "disability and disfigurement," *see* Logan Compl. ¶ 12 (Count I)—could easily exceed $75,000. Indeed, it is likely that the Logans listed "in excess of $50,000" in their underlying complaint merely to enable them to file their case as an "L" case, better known as a Law Division case in state court. *See* Logan Compl. (identifying case no. as "2015 L 004"). In Kendall County, the Law Division hears only civil actions for monetary damages where the plaintiff is seeking more than $50,000 in damages. Kendall County New Case Information Sheet, available at: http://www.co.kendall.il.us/circuit-clerk/forms/ (identifying "Law(L)" cases as "$50,001 & over"). Thus, the Logans likely included the $50,000 amount in their complaint for procedural reasons, and not as an estimate of what they are seeking to recover from Midland.

Moreover, although Midland makes much of the more-than-$50,000 allegation in their complaint, Midland fails to point out that the Logans requested this amount solely for their first claim for relief, that is, the negligence claim. *See* Logan Compl. ¶ 12 (Count I). There is a second claim—for nuisance—and there the Logans did not specify any particular damages amount. For that claim, the Logans allege, without any particular limitation on damages, that they have "incurred damages including, but not limited to, a loss of the reasonable use and enjoyment of their home, a disruption in the quality of their lives and damage to their personal property." *Id.* ¶ 6 (Count II). When the allegations in both of the Logans' claims are

9

considered together, it is distinctly possible that the amount at stake in the underlying lawsuit is more than $75,000, as American alleges it is.[1]

What is more, the value of the underlying lawsuit makes up only a part of the amount in controversy in this case. The cost of defending Midland against the Logans' lawsuit must also be considered. In its briefing, American asserts that the cost of providing Midland with a defense will, by itself, be more than $75,000. Def.'s Resp. Br. at 12-13. American points out that if it is required to defend Midland, not only will it be required to pay the legal fees and costs associated with preparing and representing Midland through trial, but it will also likely have to pay for at least four experts, who will need to be deposed and prepped for trial in order to refute the Logans' contentions that mold was present in their apartment and that they were injured as a result. *Id.* at 13. Midland does not challenge these assertions. And Midland's contention that attorney's fees should not be considered toward the

---

[1]Midland also argues that because it is impossible to determine from the Logans' complaint whether Jim or Lori Logan is entitled to recover more than $75,000, the rule against aggregating multiple litigants' claims to reach the required jurisdictional amount, *see Meridian Sec. Ins. Co.*, 441 F.3d at 539 (citing *Snyder v. Harris*, 394 U.S. 332 (1969)), prevents this Court from having diversity jurisdiction. Pl.'s Br. at 7-8. But Midland's argument misses the mark. In *Meridian Sec. Ins. Co.* the Seventh Circuit rejected a similar argument, explaining that the anti-aggregation rule does *not* apply to a federal declaratory judgment action between a single plaintiff and a single defendant. 441 F.3d at 539 (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347-48 (1977)). There, the Seventh Circuit explained that in a declaratory judgment action involving an insurance coverage dispute between an insurer and its insured, "[f]rom [the insurer's] perspective there is only one claim—by its insured, for the sum of defense and indemnity costs." *Id.* That this "unitary controversy … reflects the sum of many smaller controversies" does not change the fact that it remains an action between a single plaintiff (the insured) and a single defendant (the insurer). *Id.* This case is no different. Here, Midland is seeking a declaration that its insurer must defend and indemnify it against the entire underlying lawsuit. Whether the $75,000 damages amount comes from one or both of the Logans does not matter from American's perspective. The fact remains that Midland is seeking indemnity for everything—both Lori and Jim Logan's claims. Thus, the anti-aggregation rule does not preclude jurisdiction in this case.

jurisdictional amount is flat-out wrong. It is well-settled that, in a declaratory-judgment fight over insurance coverage, the cost of providing a defense to the insured in the underlying lawsuit counts toward the amount in controversy. *See, e.g.*, *Motorists Mut. Ins. Co. v. Simpson*, 404 F.2d 511, 515 (7th Cir. 1968). Whether the insurer must foot the bill for defense and liability in the underlying suit is the essence of the coverage dispute, so of course it counts. *See Macken v. Jensen*, 333 F.3d 797, 799-800 (7th Cir. 2003) (object of the litigation is either "what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand"). This case is no exception. In its complaint, Midland seeks not only a declaration that American must indemnify it against any potential damages award in the underlying lawsuit, but also a declaration that American must *defend* it in that suit. *See* Decl. J. Compl. ¶ 1.

In view of the allegations in the Logan suit, and what is at stake in the coverage dispute, American has readily alleged that the amount in controversy in this case is more than $75,000. Put another way, there is no "legal certainty" that the dispute here is really for less than $75,000, and Midland has failed to undermine American's contention. *Oshana*, 472 F.3d at 511; *Meridian Sec. Ins. Co.*, 411 F.3d at 541. The amount in controversy requirement is satisfied.

### B. Diversity of Citizenship

Midland also argues that there is a lack of complete diversity of citizenship. *See* 28 U.S.C. § 1332(a). As noted above, at first glance it does appear that the Illinois citizenship of both Midland and the Logans defeats complete diversity.

American asserts, however, that this fact does not destroy diversity jurisdiction because the Logans have been fraudulently joined. *See* Notice of Removal ¶¶ 3, 6.

American is correct. Although a plaintiff is generally free to choose its own forum, a plaintiff "may not join an in-state defendant solely for the purpose of defeating federal diversity jurisdiction." *Schwartz v. State Farm Mut. Auto Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *Gottlieb v. Westin Hotel*, 990 F.2d 323, 327 (7th Cir. 1993). In that case, the defendant is considered fraudulently joined, and may be disregarded for purposes of determining diversity jurisdiction. *Schwartz*, 174 F.3d at 878; *LaRoe v. Cassens & Sons, Inc.*, 472 F. Supp. 2d 1041, 1045 (S.D. Ill. 2006). "To establish fraudulent joinder, a removing defendant must show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant."[2] *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) (emphasis in original omitted). Put differently, the defendant must show that the plaintiff's claim has "no chance of success" against the non-diverse defendant. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); *see also Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (Plaintiff cannot defeat removal by naming a non-diverse party who has "no real connection" with the dispute before the court.). "If the removing defendant can meet this 'heavy burden,' [then] the federal court considering removal may disregard, for

---

[2]A removing defendant can also establish that a non-diverse party has been fraudulently joined by showing that the plaintiff has fraudulently pled jurisdictional facts. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993) (Joinder is fraudulent when "there has been outright fraud in plaintiff's pleading of jurisdictional facts."). American, however, does not make this argument.

jurisdictional purposes, the citizenship of [those] nondiverse defendants, assume jurisdiction over [the] case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Morris*, 718 F.3d at 666; *Poulos*, 959 F.2d at 73.

Here, it is clear that Midland has no real claim against the Logans. In its complaint, Midland clearly states that what it seeks is a declaration that American is obligated to defend and indemnify it in the underlying lawsuit—and that is all. Decl. J. Compl. ¶ 1. Midland does not attempt to assert a cause of action against the Logans, nor does it seek to hold the Logans liable in any way. In fact, Midland explicitly states in its complaint that it "seeks no separate relief or judgment against defendant Lori Logan or against defendant Jim Logan." *Id.* ¶ 5. Sure, an underlying tort claimant may have an interest in the outcome of a coverage dispute brought by an insured against its insurer, *see, e.g.*, *Flashner Medical P'ship v. Marketing Mgmt., Inc.*, 545 N.E.2d 177, 182-83 (Ill. App. Ct. 1989) (tort claimant has a real and substantial interest in the outcome of an insurance coverage dispute because the coverage determination could eliminate a source of funds), but that claimant faces no potential liability to the *insured* in a coverage suit. There is no claim that the insured can make against the underlying-suit tort claimant, and the tort claimant is in no position to provide the relief requested by the insured: the cost of providing a defense and indemnification against an adverse judgment. Without a claim to bring against the Logans, Midland has no chance of success against the Logans. The Logans are fraudulently joined.

To resist this conclusion, Midland asserts that it did not fraudulently join the Logans because doing so was necessary, according to Midland, to ensure that the Logans will be "bound by the judgment that will be entered in this matter." Pl.'s Br. at 5. In other words, Midland argues, it joined the Logans in order to avoid having to "relitigate the coverage question with the Logans, down the road." *Id.* That does not make sense. It is of course true that, generally speaking, someone cannot be bound by a judgment entered in a case in which it was not a party. *See Hansberry v. Lee*, 311 U.S. 32, 40 (1940); *Exelon Generation Co, LLC v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 540 F.3d 640, 649 (7th Cir. 2008); *Williams v. Madison Cty. Mut. Auto. Ins. Co.*, 240 N.E.2d 602, 604 (Ill. 1968). But the Logans do not have a coverage dispute with Midland, and Midland does not have a coverage dispute with the Logans: both the Logans and Midland want American to indemnify Midland for any liability to the Logans. If the Logans win a favorable judgment against Midland in the underlying lawsuit, then it is likely (at least if Midland cannot satisfy the judgment) that the Logans will want to pursue *American*— because American provides the Logans with another potential source of funds with which to satisfy their hoped-for judgment. The Logans would have no reason to pursue the coverage issue with Midland; at that point, they would already have their judgment against Midland and could seek coverage in their own right. *See Pratt v. Protective Ins. Co.*, 621 N.E.2d 187, 191 (Ill. App. Ct.), *appeal denied*, 624 N.E.2d 816 (Ill. 1993) ("An injured party may always bring a declaratory judgment action to determine a tortfeasor's coverage under an insurance policy."); *Reagor*, 415

N.E.2d at 514. If anything, it is *American* that would want to bind the Logans in American's mirror-image counterclaim against Midland, which seeks a declaratory judgment that there is no coverage. R. 7, Countercl. Thus, Midland's argument that the Logans are necessary parties in Midland's action for some claim-preclusion or issue-preclusion reason is groundless.[3] Accordingly, the Court concludes that the Logans have been fraudulently joined and that they must be dismissed from the suit. Without the Logans, complete diversity of citizenship is satisfied in this case.

### C. Procedural Defects in Removal

Midland's last two arguments in support of remand are that (1) American has failed to satisfy the forum defendant rule, which requires that no defendant be a citizen of the state in which the action is brought, *see* 28 U.S.C. § 1441(b)(2), and (2) that American has failed to obtain consent for removal from all defendants, as is required under 28 U.S.C. § 1446(a)(2)(A). Both of these procedural defect arguments assume that the Logans were properly joined as defendants; however, because this Court has already concluded that the Logans were fraudulently joined, neither argument is persuasive.

---

[3]In the interest of completeness, the Court notes that there is a line of Illinois cases that say, in general terms, that tort claimants are considered necessary parties to a declaratory-judgment action between insureds and insurers to determine insurance coverage. But those cases hold that the tort claimants are necessary because they have an interest against the *insurer*, who is a potential source of funds to satisfy a judgment. *See M.F.A. Mut. Ins. Co. v. Cheek*, 363 N.E.2d 809, 811 (Ill. 1977) (plaintiffs in the underlying action were "necessary parties *defendant*" to declaratory judgment action brought by insurer to determine insurance coverage) (emphasis added); *Flashner Medical P'ship*, 545 N.E.2d at 182-83 (in declaratory judgment action brought by insurer, injured parties should have remained as *defendants* with the insured (citing *Williams v Madison Cty. Auto Ins. Co.*, 240 N.E.2d 602, 604 (Ill. 1968))).

Section 1441(b)(2) provides that "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction … may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action is brought." This rule is known as the forum defendant rule. *Morris v. Nuzzo*, 718 F.3d 660, 666-70 (7th Cir. 2013). Midland suggests that even if this Court determines (as it has) that the Logans are fraudulently joined, American would still be in violation of this rule because the fraudulent joinder doctrine cannot be used to get around the forum defendant rule. Pl.'s Br. at 12; R. 18, Pl.'s Reply Br. at 3-4. That argument is incorrect. As support for this proposition, Midland cites to the Seventh Circuit's decision in *Morris v. Nuzzo*, 718 F.3d 660 (7th Cir. 2013). Pl.'s Br. at 8-12. *Morris*, however, is inapplicable here.

In *Morris*, the Seventh Circuit addressed whether it is ever proper to apply the fraudulent joinder doctrine to a *diverse*-citizen defendant, that is, to a defendant whose "presence triggers the forum defendant rule but does not compromise the parties' complete diversity." 718 F.3d at 666. Although the Seventh Circuit suggested that it would likely answer that question in the negative, it did not ultimately decide the issue. *Id.* at 668. What is important here is that the situation presented by this case is distinguishable from the situation in *Morris*. Unlike the removing defendant in *Morris*, who was trying to use the fraudulent joinder doctrine to get around *just* the forum defendant rule, American is first and foremost relying on the doctrine to establish complete diversity, which is the exact situation in which the doctrine is meant to be used. *Id.* at 666 (describing fraudulent joinder

16

doctrine as "an 'exception' to the requirement of complete diversity"); *see also Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011). The fact that the forum defendant rule will also be satisfied if American prevails on its fraudulent joinder argument is simply an added bonus. This fortuity does not transform American's otherwise proper invocation of the fraudulent joinder doctrine into something improper. The Seventh Circuit in no way suggested in *Morris* that the fraudulent joinder doctrine could not be used to oust a *non*-diverse defendant, just because that defendant happens to also be a resident of the state in which the suit was brought. *Morris* simply suggested that perhaps it could not be used on a *diverse* defendant, something the Logans certainly are not.

Importantly too, in contrast to *Morris*, the policy concerns underlying the fraudulent joinder doctrine actually weigh in favor of applying the doctrine in this case (that is, a case where there is both a diverse defendant and an in-state defendant). *Morris*, 718 F.3d at 668-70. As the Seventh Circuit explained in *Morris*, "[t]he fraudulent joinder doctrine is designed to strike a 'reasonable balance' between … the plaintiff's right to select the forum and the defendants, … and the defendant's statutory right of removal, and associated interest in guarding the removal right against abusive pleading tactics." 718 F.3d at 668. If a defendant were precluded from relying on the fraudulent joinder doctrine anytime there is an in-state defendant (as Midland suggests), regardless of whether that defendant is also non-diverse, then a plaintiff could grant itself home field advantage by joining a fraudulent in-state, non-diverse defendant. This case is a perfect example: if

17

American were precluded from removing the case by the forum defendant rule, even though the Logans are non-diverse and fraudulently joined, then American would be forced to defend the case in Illinois state court, Midland's home court. Midland would be rewarded for fraudulently joining the Logans. *Morris* is simply inapplicable here. Accordingly, because the Logans have been fraudulently joined, and must be dismissed from this suit, the forum defendant rule has not been violated.

Midland's final argument—regarding consent to removal—is also meritless. Although removal is considered procedurally defective when not "all defendants who have been properly joined and served" consent to removal, 28 U.S.C. § 1446(b)(2)(A), consent is not required from defendants who have been fraudulently joined, *see, e.g.*, *Hess v. Great Atl. & Pac. Tea Co.*, 520 F. Supp. 373, 375-76 (N.D. Ill. 1981) ("There have been exceptions to the rule requiring all defendants to join in a removal petition. Nominal or formal parties, unknown defendants, and defendants fraudulently joined may be disregarded."); *Gallagher v. Max Madsen Mitsubishi*, 1990 WL 129611, at *7 (N.D. Ill. Aug. 27, 1990) (unpublished) (noting the same). Because the Logans were fraudulently joined, their consent was not necessary. Accordingly, American's petition for removal is not procedurally defective.

### IV. Conclusion

For the reasons stated above, Midland's motion to remand is denied. The Logans, who have been fraudulently joined, are dismissed from this suit. At the

next status hearing, the parties should be prepared to discuss what, if any, discovery is needed before moving on to the merits of the coverage dispute.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 31, 2015